■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HECTOR GONZALEZ, Respondent. [607 NYS2d 670] —Order of the

Supreme Court, New York County (Alvin Schlesinger, J.), entered August 11, 1992, which order adhered to a decision of the same court, entered on July 1, 1992, which dismissed Indictment Number 4084/92, unanimously reversed, on the law and facts, the indictment reinstated, and the case remanded for trial.

Defendant was indicted for Attempted Murder in the Second Degree and other related crimes which resulted from the exchange of gunfire by defendant with another man in a Manhattan street. Before the grand jury, the District Attorney called the arresting officer. He also called an eyewitness. The latter stated unequivocally that he had seen defendant in a street gun battle with another armed man. In the midst of that exchange, defendant came across a crowded street shooting repeatedly at his human target until that man ran away.

The defendant, before the grand jury, had the opportunity and did give his version of what took place, in full detail. He presented himself as an upright citizen, who had been threatened by neighborhood drug dealers because of his stance against drug sales, as well as for giving information to the police concerning these activities. Defendant testified that he left his apartment building to alert the police the very morning of the crime. While on the street, he said he had to dodge bullets directed at him by one of these dealers. Defendant also claimed that he did not have a gun or fire one.

In order to merit the "exceptional remedy" of dismissal of an indictment pursuant to CPL 210.35 (5), a defendant must show that the integrity of the grand jury process was impaired, and that he suffered prejudice as a result *(People v Darby,* 75 NY2d 449, 455). Defendant failed to meet this burden.

CPL 190.50 (5) (b) provides that once a defendant has detailed his version of the events to the grand jury, he is "subject to examination by the people." Accordingly, a defendant who chooses to testify before the grand jury may be impeached within the limits of proper cross-examination *(see, People v Karp,* 76 NY2d 1006, *adopting dissenting opn in People v Karp,* 158 AD2d 378, 385).

By making a defendant "subject to examination by the people," the Legislature appreciated that if the prosecutor can do no more than passively inquire as to "what happened," "the grand jurors will not have any way of uncovering the true facts underlying the crime" *(People v Karp, supra,* at 389 [Sullivan, J., dissenting]).

Here, defendant was given every opportunity to complete his statement before the grand jury. As the Supreme Court itself noted, the prosecutor permissibly "interrupted" defendant briefly on three occasions only to explain the meaning of certain statements and to clarify the record regarding movements and directions to which defendant had referred. Moreover, those aspects of the prosecutor's cross-examination that the Judge criticized plainly related to issues bearing on defendant's credibility that defendant himself, in his testimony, had raised.

The cross-examination about defendant's prior criminal history and drug selling was not to demonstrate that defendant had a propensity for selling drugs. Rather, that cross-examination was directly relevant to defendant's specific testimony that he abhorred the drug trade and that he had been attacked because of his efforts to end the drug dealing in his apartment building and neighborhood. Given defendant's testimony, it was entirely proper for the prosecutor to question defendant's specific assertion that he had sold drugs on only one occasion. While Criminal Term apparently did not like the tone of examination, it should be noted that the inquiry did cause defendant to admit that he, in fact, had sold drugs on other occasions as well. Certainly, where defendent made his disdain for drug-dealing the cornerstone of his testimony, the prosecutor was not required to leave the grand jurors with the erroneous impression that defendant had sold drugs only once in his life.

The District Attorney also properly explored defendant's claims that he particularly despised drug selling in areas with "women and children" and that the tenants in his building could come and testify that defendant no longer sold drugs.

The prosecutor's questioning about a possible turf battle between defendant and an alleged drug dealer arose from defendant's own testimony which first advanced the "theory" of the case that he had been shot at in retaliation for his anti-drug efforts.

Under these circumstances, there was nothing improper in the prosecutor suggesting that there might have been a turf battle between the two men involving the drug trade.

While the prosecutor might better have refrained from sarcasm, it was defendant himself who first injected an emotional element into this case before the grand jury.

Significantly, the Judge himself stated that he "had some grave reservations about the bona fides" of defendant's testi-

mony. Moreover, the minutes of the grand jury proceeding show that, after the prosecutor's initial cross-examination, the grand jurors posed incisive questions on a variety of topics not limited to those the prosecutor had raised on his cross-examination. The record thus demonstrates that the prosecutor's cross-examination did not prevent the grand jurors from independently evaluating defendant's testimony. Indeed, many of the grand jurors' questions betray an obvious skepticism of defendant's account independent of anything the prosecutor had asked or said. Concur—Sullivan, J. P., Rosenberger, Ross, Asch and Rubin, JJ.